IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMANTHA MILLER | ) |
| | ) |
| Plaintiff, | )  Civil Action No. 13-211E |
| | ) |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## OPINION

*I. Introduction*

Pending before this Court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Samantha Miller ("Plaintiff" or "Claimant") for benefits under Title II ("Social Security Disability Income")("SSDI") and Title XVI ("Supplemental Security Income")("SSI") of the Social Security Act, pursuant to 42 U.S.C. § 1382(c)(3) (2013). Plaintiff argues that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence of record as required by 42 U.S.C. § 405(g) [See ECF No. 9 at 3]. As such the Plaintiff requests that benefits be awarded to Plaintiff or in the alternative the case be remanded.

To the contrary, Defendant argues that the ALJ properly evaluated the entire record and determined that, despite numerous severe impairments, Plaintiff is able to meet the basic mental demands of competitive work [ECF No. 11 at 1]. Defendant states substantial evidence supports the ALJ's decision that Plaintiff did not meet the statutory standard for entitlement to SSI [ECF

1

No. 11 at 1]. Therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

The Court has reviewed the record in its entirety and for the reasons stated below we will deny the Plaintiff's Motion for Summary Judgment and grant the Defendant's Motion for Summary Judgment.

## *II. Procedural History*

The Plaintiff filed applications for SSDI and SSI on February 9, 2010 (R. at 13) alleging disability since February 5, 2010, due to seizure disorder, bipolar disorder, anxiety disorder, borderline intellectual functioning, and personality disorder (R. at 13). Plaintiff's claims were denied at the initial level of the administrative review process on June 18, 2010 (R. at 13). On July 29, 2010 Plaintiff requested a hearing (R. at 13). ALJ Alfred J. Costanzo conducted a *de novo* hearing on October 21, 2011 (R. at 13). Present at the hearing was Vocational Expert (VE), Samuel E. Edelmann (R. at 13). On November 7, 2011, the ALJ determined that Plaintiff was not disabled under the Social Security Act (R. at 10-21). The Plaintiff filed a timely written request for review by the Appeals Council which was denied on May 9, 2013 (R. at 1-5), making the ALJ's decision the final decision of the Acting Commissioner. An appeal was subsequently filed by Plaintiff who seeks our review of the ALJ's decision.

## *III. Medical History*

On March 11, 2005 a Psychiatric Evaluation was performed because Plaintiff overdosed on her anti-depressant medication; Plaintiff did not believe her medication was working (R. at 183). Patient reports being very angry and believes that she is at severe risk of hurting herself,

2

her children, or her fiancé (R. at 183). Her GAF Score at the time of this evaluation was a 25[1] (R. at 184).

On November 5, 2008 Plaintiff underwent a Clinical Psychological Disability Evaluation performed by Julie Uran, Ph.D. (R. at 185-188). Dr. Uran's diagnosis was Bipolar I Disorder, Panic Disorder with Agoraphobia, Social Phobia, Nicotine Dependence, Borderline Personality Disorder, Borderline Intellectual Functioning, Significant Stressors, and a GAF of 50 (R. at 188). The Prognosis was deemed to be poor in terms of higher level functioning and personality integration. Dr. Uram stated learning problems will continue for Plaintiff (R. at 188).

Another Psychological Report was performed on November 14, 2008 by Martin Meyer, Ph.D. and Julie Uran, Ph.D. (R. at 193-98). In this report it is noted that Plaintiff has functional limitations in the areas of depression, anxiety, tactile processing, auditory discrimination, psychomotor speed, attentional processes, expressive language, borderline intelligence, immediate auditory recall, and higher level reasoning (R. at 198). The Doctors recommend case management, mental health support, psychiatric monitoring, and deferral to social security disability (R. at 198).

On August 5, 2009 another Psychological Evaluation was performed by Psychologists Dr. Meyer and Dr. Uran (R. at 241-46). Plaintiff's diagnosis was Bipolar Disorder, PTSD, mathematics disorder, caffeine abuse, nicotine dependence, Borderline Intellectual Functioning, Personality Disorder, strabismus, seizure activity, moderate stressors, and a GAF of 55 (R. at 245). In this report it is noted that Plaintiff said her emotional status is "better . . . trying to make life better." (R. at 242). Plaintiff was found to have functional limiations in the following areas:

---

[1] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R). The greater the number the higher the functioning of the individual.

3

Intelligence, slow learning capability, calculation abilities, general fund of vocabulary, higher level language-based reasoning, information recall, rapid fine motor dexterity, social judgment, non-verbal abstract reasoning, language usage, poor coping skills and poor insight (R. at 244-45). It was recommended that Plaintiff engage in hands-on learning, screening for job coaching assistance, mental health supports, case management, medication management, avoidance of vocational activities involving social interaction, avoidance of academically laden tasks, medical consultation for suitability for employment, medical attention for stress-related seizures, and reduce caffeine intake (R. at 245). Possible jobs noted were animal caretaker, kennel attendant, animal ride attendant, dog groomer, park worker, packaging, labeling, sorting, food assembly, kitchen helper, dishwasher, dry cleaner, and spot remover (R. at 245).

The record contains various Stairways appointment notes dating back to 2009 and a "Treating Medical Source Statement – Regarding the Nature and Severity of an Individual's Mental Impairments" was completed as recently as September 21, 2011 by Dr. Qureshi, Plaintiff's treating physician at Stairways. The doctors at Stairways treated her with therapy and medication with reported success, though there were frequent changes in the medicines prescribed due to remaining symptoms of depression and anxiety. As of October 28, 2008 Plaintiff was given a GAF of 55. In a February 2, 2010 report Plaintiff is having difficulty sleeping and reports 4 hours of sleep per night (R. at 270). In a report dated June 11, 2010 Plaintiff reports sleeping 7-8 hours per night (R. at 271).

In Dr. Qureshi's 2011 "Treating Medical Source Statement – Regarding the Nature and Severity of an Individual's Mental impairments" report, he opined that the Plaintiff had slight to moderate limitations in her ability to do numerous work-related activities, such as interacting with others, responding to work pressures, and responding to changes (R. at 179; 327-28). Most

4

areas of assessment were within normal limits, however, there is notation of labile mood and moderate anxiety. He stated that Plaintiff would be unable to complete 1 out of 5 days of work per week and would require 1 to 4 unscheduled breaks in excess of 5 to 10 minutes due to her mental health conditions (R.at 179; 329).

On May 29, 2010 Glenn W. Thompson, Ph.D. completed a report called "Bureau of Disability Determination". This diagnosis was Bipolar I Disorder, mixed, moderate, PTSD, social phobias, Borderline Personality Disorder, significant medical stressors, significant relationship stressors, partner relational problems, lack of support network, and a GAF of 35-45 (R. at 283-84). The prognosis provided was: "It is unlikely that one could expect significant improvement in the foreseeable future. It is recommended that the claimant be aided in having more frequent contacts with a counselor or psychotherapist as well as with her psychiatrist who she sees more regularly." (R. at 284). Dr. Thompson finds Plaintiff to have marked restrictions in understanding and remembering detailed instructions and carrying out detailed instructions (R. at 285). He finds her to have extreme restrictions in making adjustments in simple work-related decisions (R. at 285). Furthermore, Dr. Thompson finds marked and extreme restrictions for Plaintiff in her ability to respond appropriately to supervisors and co-workers and work pressures in a work setting (R. at 285).

*Summary of Testimony*

Plaintiff reported graduating from Conneaut Lake High School in 2003. She has worked as a cashier, unloader, sandwich maker, and most recently in August of 2008 she was an egg packer in a factory (R. at 134-135, 140). In her "Function Report" Plaintiff states that she wakes up and does a lot of cleaning, laundry and a little bit of yard work. She watches T.V. and walks her dog (R. at 150) and prepares meals (R. at 152). She reports that she can no longer go places

by herself and her Bi-Polar Disorder causes her to have racing thoughts and anxiety (R. at 151). She stated personal care is no problem but she does need reminders to take her medicine (R. at 151). Plaintiff continues to drive a car (R. at 153). Plaintiff further reports she is not good with stress or changes in routine (R. at 156).

On November 24, 2008 a Mental RFC evaluation of Plaintiff was performed by Roger Clover, Ph.D. (R. at 200-216). Dr. Clover found Plaintiff was moderately limited in her ability to understand and remember detailed instructions, in her ability to carry out detailed instructions, in her ability to maintain attention and concentration for extended periods, in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (R. at 200). It was also noted she would be moderately limited in the areas of sustained concentration and persistence, social interaction, and adaptation (R.at 201). In summary

> The claimant can understand, retain, and follow simple job instructions, i.e., perform one and two step tasks. She would be able to maintain regular attendance and be punctual. She is capable of asking simple questions and accepting instruction. She can function in production oriented jobs requiring little independent decision making." (R. at 202).

"Based on the evidence of record, the claimant's statements are found to be partially credible." (R. at 202).

"The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. at 202). Dr. Glover found the report by Dr. Uran was based on subjective narrative from the Plaintiff and overestimated the severity of claimant's functional restrictions and Dr. Uran's report not correspond with Plaintiff's record as a whole (R. at 202).

A Physical RFC was performed on December 19, 2008 (R. at 218-224). Plaintiff's seizure disorder was at issue. This RFC yielded no significant restrictions on the Plaintiff.

> [M]otor exam demonstrates normal muscle strength, tone and bulk in all four extremities. Sensory exam demonstrates mild decreased pinprick perception on the left arm and leg compared to the right. Vibratory sense mild asymmetric, being more clearly and longer perceived on the right than left. Position sense well maintained. Reflexes normal active and symmetric at the biceps, priceps, brachioradialis, knees and ankles. Coordination testing normal on finger to finger to nose, fine finger movements and rapid alternating movement, and heel to shin testing. Gait intact to heel and toe and fair in tandem. CN exam demonstrates pupils equal, round and reactive to light. Coordination testing normal. Normal EEG without evidence of epileptiform activity.

(R. at 223).

Based on evidence of record, the claimant's statements were found to be partially credible (R. at 223).

On June 11, 2010 another Mental RFC was performed by James Vizza, Psy.D. the DDS psychological consultant (R. at 289-305). Plaintiff was evaluated under the diagnoses of affective disorders, mental retardation, anxiety-related disorders, and personality disorders (R. at 289). The ALJ gave great weight to the opinion of Dr. Vizza. Dr. Vizza completed two forms as part of his evaluation of the Claimant, a Psychiatric Review Technique Form and a Mental RFC (R. at 179). Dr. Vizza opined that Plaintiff has moderate limitations in a number of work-related areas and marked limitations in three distinct areas (R. at 179). Dr. Vizza noted marked limitations for Plaintiff in the areas of her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to interact appropriately with the general public (R.at 289-90). Dr. Vizza found all other limitations (if any) to be the degree of moderate (R. at 289-90; 303). Dr. Vizza relied on Dr. Thompson's and Dr. Qureshi's (Stairways) reports and determined Plaintiff to be partially credible (R. at 291).

Dr. Vizza notes that his RFC assessment differs from Dr. Thompson's opinions because he finds that Dr. Thompson overestimated the severity of claimant's functional restrictions by relying on Plaintiff's subjective reporting of symptoms as a basis. Dr. Vizza finds Plaintiff's self-reporting is inconsistent with the totality of the evidence on file (R. at 291). Dr. Vizza determined, "The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (R. at 292).

On June 17, 2010 Wayne Johnston of Disability Determination Services ("DDS") provided a "Vocational Analysis" which stated, "[T]he claimant is found not disabled. RFC has been assessed at all exertional levels of work. Additional non-exertional restrictions include the mental capacity limited to unskilled work. Examples of jobs within this range include order filler, mail sorter and coil winder. These jobs exist in significant numbers in the national economy." (R. at 160).

At the October 21, 2011 hearing the ALJ asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The VE responded, "[T]hat given all of these factors the individual would be able to perform the requirements of the representative occupations such as motel cleaner, with 248,000 jobs nationally; janitorial worker, with 500,000 jobs locally and stocker, with 97,000 jobs locally." (R. at 20-21).

*IV. Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This Court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as

a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F) (2012).

*V. Discussion*

Under SSA, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 416(i)(l); 423(d)(1)(A); 20 C.F.R. § 404.1505 (2012). A person is unable to engage in substantial activity when:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the

9

Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. See id. at § 404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v); see also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

In this case, the Claimant asserts that she has been disabled since February 5, 2010, due to her mental health issues (R. at 177) and argues that the ALJ ignored or rejected pertinent medical evidence regarding the Plaintiff's impairments (R. at 178). In support of her motion for summary judgment, Plaintiff generally argues that the ALJ's decision was not in accord with the proper legal standards, that it did not have reasonable basis in the law and was not supported by substantial evidence [ECF No. 9 at 1]. More specifically, Plaintiff argues that the ALJ did not analyze all of the evidence of record [ECF No. 9 at 10]. The ALJ may not find the evidence to be not credible without pointing to contrary medical evidence. See Williams v. Sullivan, 970 F.2d 1178, 1184-85 (3d Cir. 1992); see also Smith v. Califano, 637 F.2d 968, 972 (3d. Cir. 1981). The ALJ must analyze all of the evidence in the record and provide an adequate

explanation for disregarding evidence. See Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994); Brewster v. Heckler, 786 F.2d 581, 584 (3d Cr. 1986); Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981).

Plaintiff, in particular, notes that she has been treated by Dr. Qureshi of Stairways since October 2006 for anxiety, panic attacks, paranoia, irritability, racing thoughts, impulsivity, mood swings and difficulty sleeping. (R. at 178). The ALJ erred in basing his findings on a selective review of the medical evidence including ignoring Plaintiff's time off task noted in the most recent Stairways report (R.at 178); this report specifies that Plaintiff would consistently miss work or need frequent extended breaks. The ALJ does not address these findings by Dr. Qureshi. "The ability to engage in substantial gainful employment, . . . means the ability to do certain of the the physical and mental acts required in the job; the claimant must be able to sustain the activity through continuous attendance in a regular work week." Dobrowolsky v. Califano, 606 F.2d 403, 408 (3d. Cir. 1979); See Sharp v. Bowen, 705 F.Supp. 1111, 1121 (W.D. Pa. 1989). In addition, Plaintiff points out that the ALJ paid "great weight" to Dr. Vizza's evaluation, but selectively disregarded the part of the assessment that indicates Plaintiff has marked limitations (R. at 179-80). Plaintiff asserts that Dr. Vizza's report should be discounted entirely because the two halves of the report contradict one another; the Psychiatric Review Technique only indicates moderate limitations while the RFC indicates some marked limitations (R. at 179).

Plaintiff also believes that the ALJ improperly emphasized Plaintiff's ability to perform functions at home and improperly determined that Plaintiff's performance at home could transfer to a work place environment. Activities such as school, hobbies, housework, social activities or use of public transportation cannot be used to show ability to engage in substantial gainful activity. See Frankenfield v. Bowen, 861 F.2d 405 (3d Cir. 1988).

11

Finally, Plaintiff asserts that the ALJ did not provide any rational basis for finding Plaintiff was anything less than credible [ECF No. 9 at 15].

The ALJ determined that the Plaintiff maintains a RFC to perform a full range of work at all exertional levels, but with non-exertional limitations (R. at 177). The ALJ asserts substantial evidence supports his decision that Plaintiff did not meet the statutory standard for entitlement to supplemental security income [ECF No. 11 at 1]. The ALJ states in his opinion that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). To satisfy this criterion the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration (R. at 16). Plaintiff's medical record does not provide us with consistent, credible evidence to satisfy this requirement. While Dr. Vizza's report finds marked limitations, we find we cannot rely on it to satisfy this criterion because, as Plaintiff points out, it is contradictory within its own evaluation.

The Commissioner, moving forward, uses the sequential evaluation process and determines at step (5) that the Plaintiff has not met her burden of proof that she cannot work in some capacity in the national economy. The Commissioner relied on the ALJ's determination:

> After careful consideration of the entire record, [I] find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform work activities that do not require balance and tasks that expose her to unprotected heights or dangerous machinery. The claimant can perform work activity involving only occasional contact with coworkers and/or the public due to moderate limits in social functioning. The claimant can perform simple, routine, repetitive tasks, not performed in a fast-paced environment and involving

relatively few work place changes, due to moderate limitations in concentration, persistence and pace.
(R. at 18).

The ALJ also determined the Claimant's statements are not credible to the extent they are inconsistent with his RFC assessment (R. at 19).

Based on the VE's testimony, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy and, therefore, was not disabled under the Act (R. at 20-21). More specifically, the VE testified that given all the factors involved in Plaintiff's case, she could perform jobs just as motel cleaner, janitorial worker, or stocker. These jobs exist in significant numbers in the national economy (R. at 20-21).

After review of the record in its entirety and careful review of the ALJ decision, we agree with the Commissioner that the ALJ's decision was supported by substantial evidence taking into account the record as a whole. To reach a satisfactory level of "substantial evidence" the ALJ must have more than a scintilla but may have less than a preponderance of evidence supporting his conclusion. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Fargnoli 247 F.3d at 38. We believe the ALJ has met this burden.

The Commissioner evaluates a disability claim by considering whether the claimant (1) is working; (2) has a severe impairment; (3) has a listed impairment; (4) can return to his past work; and (5) can perform other work. See 20 C.F.R. §§ 404.1520, 416.920. As stated above, in the Commissioner's analysis she reached the question of whether Plaintiff could perform past work or any other work in the economy. At this step the Plaintiff bears the burden of proving that her RFC or limitations are that which do not allow for any work in the national economy. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Matthews v. Eldridge, 424 U.S. 319, 336

(1976). Moreover, the ALJ is not required to uncritically accept Plaintiff's complaints. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). The ALJ, as fact finder, has the sole responsibility to weight a claimant's complaints about her symptoms against the record as a whole. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

In this case, as mentioned above, the records are generally consistent assigning restrictions for Plaintiff based on her mental health that were only "moderate" in nature. Even Stairways, Plaintiff's treating mental health provider, only listed moderate (not marked) limitations for Plaintiff. Generally more weight is to be given to the opinions of an examining source than to the opinions of non-examining sources and even more weight is generally given to the opinions of the treating source. See 20 C.F.R § 416.927(c)(1) and (2). Plaintiff notes that Stairways reported that Plaintiff would have poor work attendance but this was part of a report that finds her only to be moderately limited. The Stairways report as a whole considered in conjunction with other evidence of record, could reasonably lead the ALJ to make a determination that Plaintiff is not disabled despite the prediction of absenteeism.

With regard to Dr. Vizza's conflicting report, whether we eliminate it from the ALJ's collection of substantial evidence or include it, it would not change our outcome. Much like the record as a whole, the report contains evidence of limitations, mostly moderate in character, while there is some evidence of marked limitations. It is our opinion that the weight of evidence comes down on the side of moderate limitations and the determination that Plaintiff is not disabled and able to work in the economy in some type of work that accommodates her mental issues.

The Third Circuit precedent provides that the ALJ must analyze all relevant, probative evidence and provide adequate explanation for disregarding evidence. See Fargnoli, 247 F.3d at 41; Burnett v. Commissioner, 220 F.3d 112, 121-22 (3d Cir. 2000); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). "[T]he ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F. 3d at 429. We find that the ALJ properly substantiated his determination that Plaintiff was not disabled and expressed the reasoning behind discounting certain conflicting evidence of record.

The ALJ paid great weight to Dr. Qureshi of Stairways, the treating physician, and to the evaluation completed by Dr. Vizza who relied on Dr. Thompson's and Dr. Qureshi's reports (R. at 291). Dr. Vizza notes that his RFC assessment is different than Dr. Thompson's opinions because he finds that Dr. Thompson overestimated the severity of claimant's functional restrictions using Plaintiff's subjective report of symptoms as a basis. The ALJ agrees with Dr. Vizza's evaluation of Dr. Thompson's report and expresses that in his decision. Therefore, he did not reject this evidence for "no reason." Furthermore, the finding of "moderate" limitations made by Stairways is consistent with Dr. Meyers and Dr. Uran's August 2009 report. "[The] more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4); accord, Social Security Ruling (SSR) 96-2p.

With regard to Plaintiff's credibility, an ALJ's findings on credibility must be accorded great weight and deference. See Irelan v. Barnhart, 243 F.Supp. 2d 268, 284 (E.D. Pa. 2003); Stehley v. Astrue, 2012 WL 2572052, at *5 (W.D. Pa. July 2, 2012); Lee v. Astrue, 2012 WL 1004297, at *3 (W.D. Pa. Mar. 23, 2012). Here Plaintiff's

complaints of disability simply did not reflect what was consistently stated in the record by the medical professionals. More specifically, her condition was often described as "within normal limits" and although her symptoms were consistent with her diagnoses, they were often controlled with medication. Furthermore, there were jobs in the economy that could accommodate the symptoms that Plaintiff experienced. To further support this finding, Plaintiff herself found working with animals to be an area of interest.

Plaintiff, while being under mental health care treatment for a substantial amount of time, has a conservative treatment history and was still able to function in the daily activities of life [ECF No. 11 at 12]. Activities of daily living are relevant and may be considered in evaluating a claimant's symptoms. See 20 C.F.R. § 416.929(c)(3)(i). Therefore, based on a view of the medical records and testimony as a whole, we find the ALJ's determination and the Commissioner's subsequent decision to be reasonably sound.

## VI. Conclusion

For the foregoing reasons, we conclude that there is substantial evidence existing in the record to support the Commissioner's decision that Plaintiff is not disabled, and therefore, the Defendant's Motion for Summary Judgment is granted. The Plaintiff's Motion for Summary Judgment is denied. An appropriate order will be entered.

Date: March 18, 2014

Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc: counsel of record